UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.: _____ |
| | : | |
| | : | **Violations:** |
| v. | : | |
| | : | 18 U.S.C. § 371 (Conspiracy) |
| | : | |
| NOVA DATACOM, LLC, | : | 18 U.S.C. § 201(b) (Bribery of a |
| | : | Public Official) |
| Defendant. | : | |
| | : | 18 U.S.C. § 2 (Aiding and Abetting |
| | : | and Causing an Act to be Done) |
| | : | |
| | : | **Forfeiture:** |
| | : | |
| | : | 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. |
| | : | § 2461(c) |

Case: 1:13–cr–00084
Assigned To : Sullivan, Emmet G
Assign. Date . 3/14/2013
Description: INFORMATION (A)
Case Related To: 11-cr-267(EGS), 11-CR-276(EGS);
12-cr-102(EGS); 12-cr-181(EGS)

**I N F O R M A T I O N**

The United States Attorney charges:

**Relevant Entities and Individuals**

**FILED**

MAR 1 4 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

1.     NOVA DATACOM, LLC ("NOVA DATACOM"), was a Virginia limited liability corporation formed on or about February 5, 2004.  NOVA DATACOM provided information assurance and security services to commercial companies and federal departments and agencies, including the United States Army Corps of Engineers and the United States Army.  NOVA DATACOM maintained its corporate headquarters in Sterling, Virginia and, later, in Chantilly, Virginia.

2.     Young N. Cho, also known as Alex N. Cho ("Alex Cho"), founded NOVA DATACOM in 2004.  From 2004 through 2007, Alex Cho was the sole owner of NOVA DATACOM.  From 2007 through 2011, Alex Cho was the Chief Technology Officer of NOVA DATACOM.

3.      In or about January 2007, Alex Cho transferred complete ownership of NOVA DATCOM to Min Cho.  From 2007 through 2012, Min Cho was the sole owner and President of NOVA DATACOM.  Min Cho was the sister of Alex Cho.

4.      Nova Datacom Employee B was the Director of Systems Integration Programs for Nova Datacom.

5.      Nova Datacom Employee C was the Director of Bids and Proposals for Nova Datacom.

6.      Beginning in or about July 2008, Nova Datacom Employee D joined Nova Datacom as the Director of Engineering.

7.      Theodoros N. Hallas ("Hallas") was the Executive Vice President for Operations of NOVA DATACOM from on or about November 1, 2007 through on or about December 30, 2010.

8.      Nick Park, also known as Nochol Park ("Park"), was an agent of NOVA DATACOM.

9.      The United States Small Business Administration ("SBA") was an agency of the United States established by Congress through the Small Business Act of 1953 (15 U.S.C. §631 *et. seq.*) to provide financial, technical, and management assistance to qualified small businesses.  The SBA's Section 8(a) program, the "Business Development Program," provided business development assistance to socially and economically disadvantaged small businesses, including help in obtaining federal contracts.

10.      The United States Army's Program Executive Office Enterprise Information Systems ("PEO EIS") was a bureau with the Department of the Army that provided infrastructure and information management systems to the Army. The Project Manager, Defense Communications and Army Transmission Systems ("PM DCATS"), was a division of PEO EIS.

11.     Until April 27, 2012, Public Official C was an Assistant Project Manager for PM

DCATS. While employed at PM DCATS, Public Official C was a public official. Until in or about

May 2010, Public Official C resided and worked in Seoul, South Korea. During that time period,

Public Official C was the Contracting Officer Technical Representative ("COTR") for a task on a

prime contract with the Eighth Army, prime contract W15P7T-06-D-E407-009 (the "Prime

Contract"). Beginning in or about May 2010 through Public Official C's resignation from the

Department of the Army on or about April 27, 2012, Public Official C resided in Fairfax Station,

Virginia, and worked at Fort Belvoir, Virginia. Public Official C became a public official in or about

July 1990.

12.     Company F was the prime contractor for the Prime Contract. Company F maintained

offices in Eatontown, New Jersey.

13.     The United States Army Corps of Engineers ("USACE") was a branch of the United

States Army made up of approximately 34,000 civilian and military personnel. The Headquarters

for the USACE was located at 441 G Street, N.W., in the District of Columbia. The USACE's stated

mission was to "provide vital public engineering services in peace and war to strengthen our

Nation's security, energize the economy, and reduce risks from disasters." The Directorate of

Contingency Operations ("DCO") was a branch of the USACE. The USACE administered the

Technology for Infrastructure, Geospatial, and Environmental Requirements ("TIGER") Contract.

14.     The TIGER Contract was a vehicle that authorized federal government agencies and

departments used to purchase products and services. The TIGER Contract was an audited and

awarded Indefinite Delivery/Indefinite Quantity ("IDIQ") contract. As a result, such authorized

agencies and departments were not required to obtain three separate bids or to compare the TIGER

Contract to another contract before submitting an invoice for products and services through the TIGER Contract. The current TIGER Contract was a five-year contract running from October 1, 2009 through September 30, 2014. Over that term, the total award of orders placed against the TIGER Contract was authorized to exceed $1,000,000,000.

15.     The Contingency Operations Readiness Engineering & Support (the "CORES") Contract was a planned IDIQ contract. The CORES Contract, which if approved and issued would be administered by the USACE, would offer authorized departments and agencies an alternative to the TIGER Contract. As planned, the CORES Contract would be a five-year contract with an award potential for all contracts placed against the contract of up to $780,000,000. The CORES Contract had not been issued for solicitation to potential prime contractors.

16.     Until October 4, 2011, Kerry F. Khan ("Khan") was a Program Manager with the USACE's DCO at Headquarters in Washington, D.C. Khan was involved in, among other things, placing orders for the DCO through federal government contracts, including the TIGER Contract and the potential CORES Contract.

17.     Lee A. Khan ("Lee Khan") was Khan's son.

18.     Khan Family Member A was a close family member of Khan and Lee Khan.

19.     Until October 4, 2011, Michael A. Alexander ("Alexander") was a Program Manager with the USACE's DCO at Headquarters in Washington, D.C. Alexander was responsible for, among other things, obtaining funding for USACE orders placed through federal government contracts, including the TIGER Contract and the potential CORES Contract.

20.     Eyak Technology LLC ("EyakTek") was an Alaska Native Corporation with an office in Dulles, Virginia. EyakTek was the prime contractor for the TIGER Contract.

21.     Harold F. Babb ("Babb") was the Director of Contracts at EyakTek until on or about October 4, 2011.

22.     Oh Sung Kwon, a/k/a Thomas Kwon ("Kwon"), was the co-founder and Chief Financial Officer of Avenciatech, Inc. ("Avenciatech").  Avenciatech maintained its corporate headquarters in Annandale, Virginia.  Since in or about October 2009, Avenciatech was a government contractor.

23.     Rajesh Kumar Malik, a/k/a, Roger Malik ("Malik"), was the Executive Vice President, Director, and three percent (3%) owner of MED Trends, Inc. ("MED Trends").  MED Trends was an information technology company that competed for, obtained, and performed federal contracts.

24.     Co-Conspirator 5 ("CC-5") was a settlement agent at a real estate settlement, title, and escrow company, with offices in Annandale, Virginia.

### The Scheme to Defraud Through False Statements

25.     Prior to 2007, NOVA DATACOM focused solely on the resale of information technology equipment.  In or about 2007, Alex Cho and Park sought to expand NOVA DATACOM's business into the field of government contracting.  In order to gain an advantage in securing government contracts, Alex Cho transferred complete ownership of NOVA DATACOM to Min Cho, which enabled NOVA DATACOM to apply to the SBA for 8(a) status as a woman-owned, minority small business.  At that time, Alex Cho and Min Cho did not intend that Min Cho would control NOVA DATACOM or run its day-to-day operations; Min Cho had assumed ownership of NOVA DATACOM for the sole purpose of securing 8(a) status.

26.     In or about July 2007, NOVA DATACOM submitted an application to the SBA for certification as an 8(a) small disadvantaged business.  In its application, NOVA DATACOM provided false information concerning, among other things, the educational background for Alex Cho, the educational background and employment status of Nova Datacom Employee D, and the initial intent of Min Cho to run the day-to-day operations of NOVA DATACOM.  In or about September 2007, based in part on those false statements, the SBA certified NOVA DATACOM as an 8(a) small disadvantaged business.

27.     Following its certification by the SBA, NOVA DATACOM submitted written responses to solicitations from federal agencies to provide services and equipment.  As part of those responses, NOVA DATACOM provided past performance references and evaluations from corporate entities that purportedly had contractual relationships with NOVA DATACOM ("Nova Datacom References").  From in or about November 2007 to in or about December 2010, NOVA DATACOM knowingly submitted to federal agencies false past performance references and evaluations for corporate entities affiliated with Malik, Kwon, and Nova Datacom Employee D to fraudulently burnish the qualifications of NOVA DATACOM to perform federal contracts.

28.     In or about December 2007 and March 2008, NOVA DATACOM submitted pricing information to the United States General Services Administration ("GSA") on labor categories that NOVA DATACOM charged and sought to charge federal agencies for contracts awarded to NOVA DATACOM through a GSA multiple awards schedule.  The proposed labor rates purported to reflect discounts off the best customer rate offered by NOVA DATACOM to corporate entities affiliated with Malik, Kwon, and Nova Datacom Employee D.  The proposed labor rates were false because NOVA DATACOM had no contracts in force with those corporate entities.  On or about March 28,

2008, based in part on those false statements, the GSA awarded NOVA DATACOM the GSA Multiple Awards Schedule No. GS-35F-0322U under Schedule 70 (Information Technology) with Special Item Number ("SIN") 132-51, and approved the labor categories and the per hour labor rates to be charged by NOVA DATACOM on contracts awarded under the multiple awards schedule.

### The Bribery Scheme with Public Official C

29.     In June 2007, Park began providing things of value on behalf of NOVA DATACOM to Public Official C in return for Public Official C providing official assistance to direct subcontracts to NOVA DATACOM, including first-class airline upgrades and entertainment. On or about June 28, 2007, Public Official C provided official assistance in recommending NOVA DATACOM for a subcontract valued at approximately $329,792.64. In or about July 2007, in Hawaii, Park paid Public Official C $40,000 cash in return for the award of the subcontract to NOVA DATACOM. Later in 2007, Alex Cho paid Public Official C $10,000 in cash. Alex Cho also supplied Public Official C with things of value such as casino chips and lodging in Las Vegas.

### The Bribery Scheme through the TIGER Contract

30.     In or about early 2007, Park introduced Khan to the company and to Alex Cho. Following discussions with Park and Alex Cho, Khan agreed to use his official position to direct contracts and subcontracts from the USACE to NOVA DATACOM in exchange for money and other things of value. From then on, NOVA DATACOM, through Park, Alex Cho, Min Cho, and others (collectively referred to herein as "Nova Datacom Representatives") paid Khan and Alexander, directly and indirectly, in exchange for Khan and Alexander exercising their official duties to direct USACE contracts and subcontracts to NOVA DATACOM and to obtain funding for those contracts and subcontracts, respectively.

-7-

31.    In or about 2008, Khan introduced Alex Cho to Babb.  Babb agreed to accept kickbacks, that is, money, gifts, and things of value, from NOVA DATACOM as compensation for Babb providing favorable treatment to NOVA DATACOM in connection with subcontracts between NOVA DATACOM and EyakTek.

32.    At Khan's direction, NOVA DATACOM submitted fraudulently inflated quotes to the USACE for the work performed on the direct contracts and to EyakTek for the work performed on the subcontracts.  The fraudulently inflated amounts were referred to by KHAN as "overhead." The "overhead" referred to fictitious and overpriced information assurance and security equipment and services on the quotes submitted by NOVA DATACOM.  NOVA DATACOM provided to the USACE and EyakTek the information assurance and security equipment and services legitimately included on the contracts and subcontracts, but also billed for the inflated and fictitious equipment and services included on the orders.  On the direct contracts, Khan caused the USACE to approve and remit payment to NOVA DATACOM for the fraudulently inflated invoices.  On the subcontracts through the TIGER Contract, Khan caused the USACE to approve and remit payment to EyakTek for the fraudulently inflated invoices.  After subtracting its profit margin, EyakTek paid the remainder to NOVA DATACOM.  This remainder included payment for the "overhead."  As directed by Khan, Alexander, and Babb, Alex Cho caused NOVA DATACOM to pay a portion of the "overhead" directly and indirectly for the benefit of Khan, Alexander, Babb, and others.  From in or about the Spring of 2007 through on or about October 4, 2011, the USACE awarded contracts and subcontracts to NOVA DATACOM.  Included in those contracts and subcontracts was in excess of $20 million in "overhead."

33.     From in or about the Spring of 2007 through October 4, 2011, NOVA DATACOM and its Representatives provided things of value directly and indirectly to Khan of approximately $7,500,000.

34.     At the time of Khan's arrest on October 4, 2011, Nova Datacom owed Khan over $6 million in fraudulently inflated invoices approved by the USACE. Of that amount, Min Cho was holding $2 million in trust for Khan that Min Cho had received from Nova Datacom in December 2011 under the guise of a "bonus." In May 2011, Khan directed Alex Cho to execute promissory notes reflecting that Nova Datacom owed $6 million to corporate entities controlled by Khan. In addition, in the Summer of 2011, Khan and Alexander agreed to include over $5 million as "overhead" in planned orders to be awarded to Nova Datacom.

35.     From in or about 2008 through on or about March 2, 2011, NOVA DATACOM and its Representatives offered, promised, and provided things of value directly and indirectly to Alexander of approximately $1,000,000.

36.     From in or about 2008 through on or about March 2, 2011, NOVA DATACOM and its Representatives offered, promised, and provided things of value directly and indirectly for the benefit of Babb in excess of $400,000.

## The Bribery Scheme through the CORES Contract

37.     In early 2010, Alex Cho, Khan, Alexander, Babb, Nova Datacom Employee B, Nova Datacom Employee C, and others agreed to work together to steer the potential award of the CORES Contract to NOVA DATACOM. Khan, Alexander, Babb, and Alex Cho intended to use the CORES Contract as a vehicle to enable NOVA DATACOM, if selected as the prime contractor for the CORES Contract, to funnel monies and other things of value directly and indirectly to Khan,

Alexander, Babb, and Alex Cho.   From early 2010 through on or about March 2, 2011, NOVA DATACOM and its Representatives promised things of value to Khan, Alexander, Babb, and others to attempt to steer the award of the CORES Contract to NOVA DATACOM.

### The Scheme to Defraud through Kickbacks

38.   In or about July 2010, Kwon and Alex Cho agreed to pay kickbacks to Kwon in return for subcontracts awarded to NOVA DATACOM through the Army.   With Kwon's assistance, NOVA DATACOM obtained a subcontract with Company F to provide services to the Eighth United States Army Command & Control (C2), Command, Control, Communications, Computers and Intelligence Technology (C4IT) Technical Support Services in response to Solicitation Number: Task 183-10-001, W15P7T0-06-D-E407-0009 (Purchase Order Number 10-0000497), with a subcontract value, including all modifications, of $1,448,013.26.   In return, NOVA DATACOM agreed to pay a portion of its profits from the subcontract to Kwon.   From in or about July 2010 through in or about May 2011, NOVA DATACOM paid approximately $390,000 in profits derived from its contract with the Army for the benefit of Kwon.

### COUNT ONE
### (Conspiracy to Defraud the United States)

39.   Paragraphs 1 through 38 of this Information are realleged and incorporated by reference as if set out in full.

40.   From in or about July 2007 through in or about August 2011, in the District of Columbia and elsewhere, the defendant, NOVA DATACOM, its Representatives, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to defraud the United States and agencies thereof, to wit, the United

States Army and the United States Small Business Administration, in violation of Title 18, United States Code, Section 371.

### Goal of the Conspiracy

41.     It was a goal of the conspiracy that the defendant, NOVA DATACOM, and others would and did enrich themselves through the procurement by NOVA DATACOM of federal government contracts and subcontracts.

### Means and Methods of the Conspiracy

42.     Among the means and methods by which the defendant, NOVA DATACOM, its Representatives, and its co-conspirators would and did carry out the conspiracy were the following:

a.     Alex Cho, Min Cho, and Park paid and caused NOVA DATACOM to pay Public Official C in exchange for the award of government contracts.

b.     Alex Cho, Min Cho, and Park paid and caused Nova Datacom to pay Khan and Alexander in exchange for the award of government contracts. At Khan's direction, NOVA DATACOM submitted fraudulently inflated quotes to EyakTek and the USACE. Khan and Alexander caused federal departments and agencies to fund contracts and subcontracts for the benefit of NOVA DATACOM. Khan used his official position to cause the USACE to remit payments to EyakTek and NOVA DATACOM for the fraudulently inflated contracts and subcontracts awarded to NOVA DATACOM. Alex Cho promised, offered, and paid and caused NOVA DATACOM and others to pay a portion of the contracts and subcontracts to Khan and Alexander.

c.     Alex Cho caused NOVA DATACOM to pay Babb in exchange for Babb using his official position at EyakTek to facilitate the processing of the subcontracts awarded to NOVA DATACOM through the TIGER Contract

    d.  Khan, Alexander, Babb, Alex Cho, Nova Datacom Employee B, and Nova Datacom Employee C agreed to steer and attempted to steer the award of the CORES Contract by the USACE to NOVA DATACOM.

    e.  Alex Cho promised, offered, and paid, and caused Nova Datacom to pay, things of value to Khan, Alexander, and Babb to attempt to steer the award of the CORES Contract by the USACE to NOVA DATACOM.

    f.  NOVA DATACOM provided false information to the SBA to obtain certification of NOVA DATACOM as an 8(a) small disadvantaged business.

    g.  NOVA DATACOM provided false past performance references to federal agencies to burnish the qualifications of NOVA DATACOM to procure and attempt to procure federal government contracts.

    h.  NOVA DATACOM provided false pricing information to the GSA to set and attempt to set artificial prices on federal contracts awarded to NOVA DATACOM pursuant to a GSA multiple awards schedule.

    i.  Alex Cho and Kwon agreed that NOVA DATACOM would pay kickbacks for the benefit of Kwon in return for a subcontract awarded to NOVA DATACOM through the Department of the Army.

**Overt Acts**

43.     In furtherance of the conspiracy, and to effect the illegal objects thereof, the defendant, NOVA DATACOM, its Representatives, and its co-conspirators committed the following overt acts, among others, in the District of Columbia and elsewhere:

a.     On or about July 3, 2007, NOVA DATACOM Representatives submitted an Application to the SBA for certification as an 8(a) small disadvantaged business that provided false information concerning, among other things, the educational background for Alex Cho, the educational background and employment status of Nova Datacom Employee D, and the initial intent of Min Cho to run the day-to-day operations of NOVA DATACOM.

b.     In or about July 2007, in Hawaii, Park, on behalf of NOVA DATACOM, paid Public Official C $40,000 cash in return for the award of a subcontract to NOVA DATACOM.

c.     On or about February 21, 2008, EyakTek issued Purchase Order #PO002646 MOD1 to NOVA DATACOM for the delivery of equipment to the USACE's Headquarters in Washington, D.C., attention Khan, for a total price of $236,000.  As directed by Khan, Alex Cho caused the order to include a fictitious line item that fraudulently inflated the cost to the USACE by approximately $93,000.

d.     On or about June 10, 2008, EyakTek issued Purchase Order #PO002859 to NOVA DATACOM for the delivery of equipment to a USACE facility in Mobile, Alabama, for a total price of $818,046.68.  As directed by Khan, Alex Cho caused the order to include a fictitious line item that fraudulently inflated the cost to the USACE by approximately $186,000.

e.     On or about July 17, 2008, EyakTek issued Purchase Order #PO002927a to NOVA DATACOM for the delivery of equipment to a USACE facility in Fort Belvoir, Virginia,

attention Khan, for a total price of $1,812,884.55. As directed by Khan, Alex Cho caused the order to include two line items that were not delivered that fraudulently inflated the cost to the USACE by approximately $673,460.40.

      f.      On or about September 11, 2008, EyakTek issued Purchase Order #PO002859 MOD 2 to NOVA DATACOM, for a total price of $777,700.68. As directed by Khan, Alex Cho caused the modification to add three fictitious line items to Purchase Order #PO002859 that fraudulently inflated the cost to the USACE by approximately $103,150.

      g.      On or about September 23, 2008, EyakTek issued Purchase Order #PO003214 to NOVA DATACOM for the delivery of equipment to a USACE facility in Vicksburg, Mississippi, for a total price of $743,605.85. As directed by Khan, Alex Cho caused the order to include equipment that was not delivered that fraudulently inflated the cost to the USACE by approximately $254,190.

      h.      On or about September 30, 2008, EyakTek issued Purchase Order #PO003326 to NOVA DATACOM for the delivery of services to the USACE's Headquarters in Washington, D.C., attention Khan, for a total price of $2,734,540. As directed by Khan, Alex Cho caused the order to include services that were not delivered that fraudulently inflated the cost to the USACE by approximately $426,920.

      i.      On or about September 30, 2008, EyakTek issued Purchase Order #PO003326a to NOVA DATACOM for the delivery of equipment and services to the USACE's Headquarters in Washington, D.C., attention Khan, for a total price of $1,658,818.47. As directed by Khan, Alex Cho caused the order to include equipment and services that were not delivered that fraudulently inflated the cost to the USACE by approximately $1,400,000.

j.      On or about October 3, 2008, EyakTek issued Purchase Order #PO003326e to NOVA DATACOM for the delivery of equipment to the USACE's Headquarters, attention Khan, for a total price of $89,635. As directed by Khan, Alex Cho caused the order to include equipment that was not delivered that fraudulently inflated the cost to the USACE by the entire price of $89,635.

k.      On or about October 3, 2008, EyakTek issued Purchase Order #PO003343 to NOVA DATACOM for the delivery of equipment to the USACE's Headquarters, attention Khan, for a total price of $47,500. As directed by Khan, Alex Cho caused the order to include equipment that was not delivered that fraudulently inflated the cost to the USACE by the entire price $47,500.

l.      On or about December 23, 2008, NOVA DATACOM wired $1,000,000 to a third-party conduit, the majority of which was for the intended benefit of Alexander. Specifically, the money was used to purchase and improve a coffee shop called the Seven Monkeys in Seoul, South Korea, for Alexander's associate.

m.      On or about March 11, 2009, EyakTek issued Purchase Order #PO03489 to NOVA DATACOM for the delivery of equipment and services to the USACE's Headquarters, attention Khan, for a total price of $1,938,420. As directed by Khan, Alex Cho caused the order to include equipment and services that were not delivered that fraudulently inflated the cost to the USACE by approximately $1,358,471.91.

n.      On or about May 22, 2009, EyakTek issued Purchase Order #PO003773 to NOVA DATACOM for the delivery of equipment and services to the USACE's Headquarters, attention Khan, for a total price of $2,343,540.88. As directed by Khan, Alex Cho caused the order

to include equipment and services that were not delivered that fraudulently inflated the cost to the USACE by the entire price of $2,343,540.88.

      o.     On or about August 11, 2009, EyakTek issued Purchase Order #PO003884 to NOVA DATACOM for the delivery of equipment and services to the USACE's Headquarters, attention Khan, for a total price of $6,780,767.75. As directed by Khan, Alex Cho caused the order to include equipment and services that were not delivered that fraudulently inflated the cost to the USACE by approximately $3,533,541.48.

      p.     On or about September 24, 2009, EyakTek issued Purchase Orders ##PO004158, PO004159 and PO004162 to NOVA DATACOM for the delivery of equipment and services to several USACE facilities, attention Khan, for a total price of $16,035,677.35. As directed by Khan, Alex Cho caused the order to include prices for equipment and services that fraudulently inflated the cost to the USACE by approximately $6,000,000.

      q.     On or about September 30, 2010, EyakTek issued Purchase Order #PO005205 to NOVA DATACOM for the delivery equipment and services to the USACE in Washington, D.C., attention Khan, for a total price of $9,207,679.20. As directed by Khan, Alex Cho caused the order to fraudulently inflate the cost to the USACE by approximately $3,000,000.

      r.     On or about February 7, 2011, EyakTek issued a modification to Purchase Order #PO005208c to NOVA DATACOM for the delivery of equipment and services to the USACE in Washington, D.C., attention Khan, for a price of $2,952,604.77. As directed by Khan and Babb, the order falsely described the equipment and services that NOVA DATACOM intended to provide to EyakTek for delivery to the USACE that fraudulently inflated the cost to the USACE by approximately $574,000.

**(Conspiracy, in violation of Title 18, United States Code, Section 371)**

**COUNT TWO**
**(Bribery of a Public Official)**

44.     Paragraphs 1 through 38, 42, and 43 of this Information are realleged and incorporated by reference as if set out in full.

45.     From in or about July 2007 through in or about December 2007, in a continuing course of conduct, in the District of Columbia and elsewhere, defendant NOVA DATACOM did directly and indirectly, corruptly give, offer, and promise things of value to a public official, namely Public Official C, and corruptly offered and promised things of value to such public official personally and to other persons and entities as directed by such public official, with the intent to influence official acts, to influence such public official to commit and aid in committing, collude in, and allow fraud, and make opportunity for the commission of fraud on the United States, and to induce such public official to do and omit to do acts in violation of the lawful duty of such public official, to wit, NOVA DATACOM and its Representatives gave, offered, and promised in excess of $50,000, directly and indirectly, to Public Official C in return for Public Official C providing preferential treatment for NOVA DATACOM with potential contracts and subcontracts awarded through the Department of the Army.

**(Payment of a Bribe to a Public Official, in Violation of Title 18, United States Code, Sections 2 and 201(b)(1)(A), (B), and (C))**

## COUNT THREE
### (Bribery of a Public Official)

46.     Paragraphs 1 through 38, 42, and 43 of this Information are realleged and incorporated by reference as if set out in full.

47.     From in or about July 2007 through in or about March 2011, in a continuing course of conduct, in the District of Columbia and elsewhere, defendant NOVA DATACOM did directly and indirectly, corruptly give, offer, and promise things of value to a public official, namely Kerry F. Khan, and corruptly offered and promised things of value to such public official personally and to other persons and entities as directed by such public official, with the intent to influence official acts, to influence such public official to commit and aid in committing, collude in, and allow fraud, and make opportunity for the commission of fraud on the United States, and to induce such public official to do and omit to do acts in violation of the lawful duty of such public official, to wit, NOVA DATACOM and its Representatives gave, offered, and promised in excess of $14,000,000, directly and indirectly, to Kerry F. Khan in return for Kerry F. Khan approving contracts and subcontracts for NOVA DATACOM and providing preferential treatment for NOVA DATACOM with potential contracts and subcontracts awarded through the USACE.

**(Payment of a Bribe to a Public Official, in Violation of Title 18, United States Code, Sections 2 and 201(b)(1)(A), (B), and (C))**

## COUNT FOUR
### (Bribery of a Public Official)

48.     Paragraphs 1 through 38, 42, and 43 of this Information are realleged and incorporated by reference as if set out in full.

49.     From in or about July 2007 through in or about March 2011, in a continuing course of conduct, in the District of Columbia and elsewhere, defendant NOVA DATACOM did directly and indirectly, corruptly give, offer, and promise things of value to a public official, namely Michael A. Alexander, and corruptly offered and promised things of value to such public official personally and to other persons and entities as directed by such public official, with the intent to influence official acts, to influence such public official to commit and aid in committing, collude in, and allow fraud, and make opportunity for the commission of fraud on the United States, and to induce such public official to do and omit to do acts in violation of the lawful duty of such public official, to wit, NOVA DATACOM and its Representatives gave, offered, and promised in excess of $1,000,000, directly and indirectly, to Michael A. Alexander in return for Michael A. Alexander funding contracts and subcontracts for NOVA DATACOM and providing preferential treatment for NOVA DATACOM with potential contracts and subcontracts awarded through the USACE.

**(Payment of a Bribe to a Public Official, in Violation of Title 18, United States Code, Sections 2 and 201(b)(1)(A), (B), and (C))**

### FORFEITURE ALLEGATION

1.     Upon conviction of any of the offenses alleged in Counts Two through Four, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C.

§ 2461(c). The United States will seek a forfeiture money judgment against the defendant totaling

$6,884,948.16 for the offenses in Counts Two through Four.

    2.    If any of the property described above as being subject to forfeiture, as a result of any

act or omission of the defendant:

        a.    cannot be located upon the exercise of due diligence;

        b.    has been transferred or sold to, or deposited with, a third party;

        c.    has been placed beyond the jurisdiction of the Court;

        d.    has been substantially diminished in value; or

        e.    has been commingled with other property that cannot be divided without

            difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value

of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28 United Sates Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

                RONALD C. MACHEN JR.
                United States Attorney
                In and For the District of Columbia

By:             

                MICHAEL K. ATKINSON
                D.C. Bar No. 430517
                JAMES E. SMITH
                ANTHONY SALER
                Assistant United States Attorneys
                Fraud and Public Corruption Section
                555 4th Street, N.W.
                Washington, D.C. 20530
                202.252.7817 (Atkinson)

DATED: March 14, 2013      202.252.6976 (Smith)